IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BIOGEN IDEC MA INC.,                               C.A. No. 03-12305 PBS

        Plaintiff,

vs.

BIOGENTECH CORPORATION,
        Defendant.

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF BIOGEN IDEC MA INC.'S
## MOTION FOR ENTRY OF DEFAULT JUDGMENT
## PURSUANT TO FED. R. CIV. P. 55(b)(2)

The plaintiff, Biogen Idec MA Inc. ("plaintiff" or "Biogen Idec"), respectfully submits this Memorandum in Support of Plaintiff's Motion for Entry of Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(2), against defendant Biogentech Corporation ("Biogentech" or "defendant"), pursuant to Fed. R. Civ. P. 55(b)(2). Plaintiff requests and Order for relief and damages as set forth in plaintiff's Complaint for Trademark Infringement and Unfair Competition (the "Complaint"). A copy of plaintiff's Complaint is attached hereto as Exhibit 1.

Plaintiff's Motion is made on the grounds that defendant has failed to answer or otherwise to appear in this action and that default entered against the defendant on February 9, 2004. A copy of the Notice of Default is attached as Exhibit 2. Plaintiff requests the entry of default judgment and a determination of the total relief and damages to which it is entitled pursuant to its Complaint under to Fed. R. Civ. P. 55(b)(2).

In support of its Motion, plaintiff states the following.

**FACTUAL BACKGROUND**

This case arises out of defendant's improper and infringing use of trademarks. Specifically, defendant's "BIOGENTEC" and "BIOGENTECH" marks infringe upon plaintiff's registered "BIOGEN" trademark, which it has used for twenty years. As such, plaintiff has brought claims against the defendant for trademark infringement and unfair competition pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1121, and 1125(a). (See Exhibit 1). Below is a summary of the facts, which are more fully set forth in the argument below, and in the Complaint.

Plaintiff, a Massachusetts corporation, has been engaged in research and development of pharmaceutical preparations for more than twenty years, and has used "BIOGEN" as a mark during that time. Such use has been continuous, commercially significant, and substantially exclusive. See Exh. 1, paras. 6-7, and attachment A thereto. The plaintiff's "BIOGEN" mark is inherently distinctive as applied to plaintiff's pharmaceutical preparations and related services, and has become well and favorably known to the relevant trade and public under such mark See Exh. 1, paras. 9-10. Furthermore, the "BIOGEN" mark has been registered with The U.S. Trademark Office, which registrations are valid, subsisting and incontestable. See Ex. 1, para. 12, and attachment B thereto.

Defendant Biogentech develops and commercializes medical products. Biogentech was originally incorporated as Aztec Ventures, Inc. in Nevada in 1997 to sell pay phone services. See Exh. 1, para. 13. The corporate name underwent several changes. Ultimately, on January 6, 2003, BioGentec, Inc. applied with the U.S. Trademark office to register BIOGENTEC for a line of pharmaceutical products, claiming use of the mark since November 22, 2000. See Exh. 1, para. 13 and attachment C thereto. The registration was refused, on the grounds that the

examining Trademark Attorney found that the mark was likely to cause confusion with the previously registered "BIOGEN" trademark. See id.

Defendant's use of "BIOGENTEC" and "BIOGENTECH" as names and marks, and as the dominant components of names and marks in connection with its business and its products, is confusingly similar to "BIOGEN" in sound, appearance, and commercial impression, and is likely to cause confusion as to source, sponsorship or affiliation, particularly where the plaintiff's and defendant's businesses are closely related in the goods and services rendered. See Exh. 1, paras. 15-16, 18 and attachments E and F thereto. Plaintiff maintains that use of these marks and names are accordingly in violation of plaintiff's rights in its registered "BIOGEN" mark pursuant to 15 U.S.C. § 1114. Exh. 1, para. 20.

Plaintiff gave notice to the defendant of its obligation to cease and desist its infringing activities, but defendant has not complied with the demands to cease and desist from such conduct. See Exh. 1, para. 22, and Exhibit G thereto. Accordingly, the continued acts and activities of Biogentech complained of constitute willful acts of infringement in derogation of Biogen Idec's rights in its federally registered trademark. Exh. 1, para. 23.

The Complaint for Trademark Infringement and Unfair Competition was filed on November 18, 2003. See Exh. 1. The Summons and a copy of the Complaint were served on the defendant in Irvine, California, on December 19, 2003, as appears from the Return of Service filed with the Court. See Return of Service, attached as Exhibit 3.

Defendant failed to serve a responsive pleading or otherwise to defend or appear. As such, plaintiff filed a Petition for Default. See Petition for Default, attached as Exhibit 4. Pursuant to Fed. R. Civ. P. 55(a), the Clerk of this Court entered default in Plaintiff's favor on February 9, 2004. See Exhibit 2.

Because the defendant has failed to appear in this action and default has entered against it, plaintiff requests the entry of default judgment and a determination of the total relief and damages to which it is entitled pursuant to its Complaint, as set forth more fully below.

## ARGUMENT

### I. PLAINTIFF HAS COMPLIED WITH FED.R.CIV.P. 55(B)(2) PROCEDURE

Under Fed. R. Civ. P. 55(b), where the defendant has been defaulted for failure to appear and plaintiff's claim against a defendant is not for a sum certain, a plaintiff may apply to the court for a judgment by default. Fed. R. Civ. P. 55(b).

Pursuant to the federal rules, "no judgment by default shall be entered against an infant or incompetent person ...." Fed. R. Civ. P. 55(b)(2). Upon information and belief, defendant, being a corporate entity, is neither a person in military service as defined in Article I of the "Soldiers' and Sailors' Civil Relief Act" of 1940, nor an infant or incompetent, therefore the Soldiers' and Sailors' Civil Relief Act does not apply. See Affidavit of Patricia A. Hartnett, annexed to Ex. 4 in support of the Motion for entry of default.

Furthermore, if "the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." Fed. R. Civ. P. 55(b)(2). Here, where the defendant has failed to appear in this action, plaintiff need not give notice of this Motion to the defendant. See Fed. R. Civ. P. 55(b)(2). Specifically, defendant has made no indication to plaintiff of "a clear purpose to defend the suit." Muniz v. Vidal, 739 F.2d 699, 700 (1st Cir. 1984).

Nor have there been any "informal contacts" between the parties "that demonstrated an intent to defend the case." Muniz, 739 F.2d at 701. See also Affidavit of Patricia A. Hartnett, attached as Exhibit 5, at para. 4; Key Bank of Maine v. Tablecloth Textile Co., Corp., 74 F.3d 349, 353-55 (1st Cir. 1996); Taylor v. Boston and Taunton Transp. Co., 720 F.2d 731, 733 (1st Cir. 1983); J. Slotnik Co. v. Clemco Industries, 127 F.R.D. 435, 439 (D. Mass. 1989). Despite having been served with the Complaint and having had a full opportunity to enter an appearance with the Court or to contact plaintiff's attorney to indicate "a clear purpose to defend the suit," defendant has failed to do so.

Although notice is therefore not required pursuant to Fed. R. Civ. P. 55(b)(2), plaintiff has elected to serve the defendant with a copy of the present Plaintiff Biogen Idec MA Inc.'s Motion for Entry of Default Judgment Pursuant to Fed. R. Civ. P. 55(b). As such, the applicable procedural requirements for an entry of default judgment pursuant to Fed. R. Civ. P. 55(b)(2) have been met or exceeded by the plaintiff.

## II. PLAINTIFF HAS DEMONSTRATED THE ELEMENTS NECESSARY TO ENTER DEFAULT JUDGMENT

The entry of default judgment is within the sound discretion of the Court. Pepsico, Inc. v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (D. Cal. 1999). In exercising its discretion to grant or deny entry of default judgment, the Court should consider the following: 1) the substantive merits of the plaintiff's claim; 2) the sufficiency of the complaint; 3) the amount of money at stake; 4) the possibility of prejudice to the plaintiff if relief is denied; 5) whether the default was the result of excusable neglect; and 6) the strong policy of the Federal Rules that favors decisions on the merits. Id. (citing Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)). In applying this discretionary standard, default judgments are more often granted than denied. Id. "If, in

order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper …." Fed. R. Civ. P. 55(b)(2).

However, "[i]f the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d §2688 at 58-59 (1998 & 1993 Supp.). "After an entry of default, a court may examine a plaintiff's complaint to determine whether it alleges a cause of action. In making that determination *it must assume that all well pleaded factual allegations are true.*" Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992) (emphasis added) (citing 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688 at 447-48 (1983)). The Court, in its discretion, may hold a hearing to determine the truth of any averment, with notice to the plaintiff that is sufficient to permit plaintiffs to marshal the evidence that might be available and necessary to meet the Court's requirements. Id.

As a result of the entry of default, the Court, in taking plaintiff's allegations as true, should enter default judgment in plaintiff's favor.

**A. Plaintiff's Claims as Alleged in the Complaint are Sufficient to State Substantive Claims Under the Lanham Act**

Plaintiff alleges sufficient facts in its Complaint for Trademark Infringement and Unfair Competition to allege both substantive causes of action raised therein.

**1. Trademark Infringement**

Trademark law seeks to prevent one seller from using a "mark" identical or similar to that used by another seller in a way that confuses the public about the actual source of the goods

or services in question. Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp.2d 117, 121 (D. Mass. 1999). Such confusion may prevent the buyer from obtaining the actual goods he or she seeks, or may endanger the reputation of the first user of the mark by association with the subsequent user. Id. To prevail on a trademark infringement claim, a plaintiff must show 1) use and therefore ownership of the mark; 2) use by the defendant of the same mark or a similar one; and 3) likelihood that the defendant's use will confuse the public. Id. Furthermore, "the 'marks (1) must be used in commerce, (b) must be nonfunctional, and (c) must be distinctive.'" Id. at 121 n.4 (quoting I.P. Lund Trading v. Kohler Co., 163 F.3d 27, 36 (1st Cir. 1998)).

When a mark is registered, "it is entitled to a legal presumption of validity." Equine Technologies, Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995). Thus, registration of a mark is "prima facie evidence of the validity of the registered mark ... and of the registrant's right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate" 15 U.S.C. § 1115(a) (2003). "Section 1115(a) entitles the plaintiff to a presumption that its registered trademark is *inherently distinctive*, as opposed to merely descriptive." Id. at 544 (emphasis added); Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 161 (1st Cir. 1977).[1]

Plaintiff Biogen Idec has demonstrated its use and ownership of the mark that is the subject of the present Complaint. Plaintiff, a Massachusetts corporation, has been engaged in

---

[1] The Lanham Act, 15 U.S.C.S. § 1072, also provides that registration of a mark on the principal register shall be constructive notice of the registrant's claim of ownership thereof. The registrations are constructive notice of ownership and a second user cannot claim that he adopted and used the mark in good faith and without knowledge of the prior use. The greatest single advantage of a principal registration is that it is constructive notice of the registrant's claim or ownership of the mark. This means simply that so long as a mark remains on the principal register, everyone is charged with notice of the claim of ownership. Sterling Brewing, Inc. v. Cold Spring Brewing Corp., 100 F. Supp. 412, 418 (D. Mass. 1951).

research and development of pharmaceutical preparations for more than twenty years. In that regard, plaintiff has used "BIOGEN" as a mark for more than twenty years. Such use has been continuous, commercially significant, and substantially exclusive. See Exh. 1, paras. 6-7, and attachment A thereto. Plaintiff's "BIOGEN" mark is inherently distinctive as applied to plaintiff's pharmaceutical preparations and related services, and has become well and favorably known to the relevant trade and public under such mark See Exh. 1, paras. 9-10. The "BIOGEN" mark is and has been famous since prior to any conduct of Biogentech complained of herein. See Exh. 1, para. 11. Furthermore, the "BIOGEN" mark has been registered with the U.S. Trademark Office, which registrations are valid, subsisting and incontestable: 1,275,543; 1,314,274; 1,343,559; 1,961,898. See Ex. 1, para. 12, attachment B thereto.

Plaintiff has also demonstrated in its Complaint that Defendant has used the same or similar mark. Defendant has been using "BIOGENTEC" and "BIOGENTECH" as names and marks, and as the dominant components of names and marks in connection with its business and its products. See Exh. 1, paras. 15-16, and attachment E thereto.

As the third element of the establishment of trademark infringement, plaintiff has alleged in its pleadings the likelihood that the defendant's use of the mark will cause confusion. The "key element" in an infringement action is the likelihood of confusion. Purolator, Inc. v. Efra Distribs., Inc., 687 F.2d 554, 559 (1st Cir. 1982).

Plaintiff has alleged that defendant's use of the contested marks or names are confusingly similar to "BIOGEN" in sound, appearance, and commercial impression, and is likely to cause confusion as to source, sponsorship or affiliation based on the prior registered "BIOGEN" mark. See Exh. 1, para. 16. Defendant's names and marks incorporate the whole of the "BIOGEN" mark and simply append the descriptive term "TEC" or "TECH" Exh. 1, at par. 17. Moreover

the business that defendant conducts and the products intended to be sold by its use of the names "BIOGENTECH' and "BIOGENTEC" are closely related to the goods sold and services rendered by plaintiff under the registered "BIOGEN" mark, notably the development and commercialization of pharmaceutical preparations, including preparations in the field of immunomodulation. See Exh. 1, para. 18 and attachment F thereto.

Furthermore, and perhaps most persuasive on the issue of confusion, on January 6, 2003, BioGentec, Inc. applied with the U.S. Trademark office to register BIOGENTEC for a line of pharmaceutical products, claiming use of the mark since November 22, 2000. See Exh. 1, para. 13 and attachment C thereto. The registration was refused, on the ground that the examining Trademark Attorney found that the mark was likely to cause confusion with the previously registered "BIOGEN" trademark. See id. For purposes of default judgment, such uncontested facts pleaded in the plaintiff's complaint are taken as true. Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992) (emphasis added) (citing 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688 at 447-48 (1983)).

Because "BIOGENTEC" and "BIOGENTECH" are confusingly similar to plaintiff's registered trademark "BIOGEN," plaintiff contends that use of these marks and names violate plaintiff's rights in its registered "BIOGEN" mark pursuant to 15 U.S.C. § 1114. Exhibit 1, para. 20.

Plaintiff therefore maintains that it has demonstrated in the well-pleaded facts and allegations of its Complaint the substantive merit of its claims necessary to support a finding in default judgment of trademark infringement.

## 2. Unfair Competition

Plaintiffs damaged by a "false designation of origin" as alleged in this case make their claim under a federal statutory tort broader in scope than the common law of unfair competition and the law of infringement. Purolater, Inc., v. EFRA Distribs., Inc., 687 F.2d 554, 560 (1st Cir. 1982). The unfair competition section of the Lanham act is designed to reach, among other things, attempts to appropriate the goodwill associated with a competitor's trademark by means of confusingly similar marking and packaging, which would create an impression that the products of the defendant originated with plaintiff. Id. A showing that the marks create a likelihood of confusion with the products of the plaintiff is a key to establishing a claim of false designation of origin.

As in the Purolater case, the likelihood of confusion demonstrated in relation to the trademark infringement argument in this case are persuasive as well in relation to a claim of false designation of origin. See id. Intent is not a necessary element of a false designation of origin claim, but is relevant inasmuch as intent to imitate enhances the likelihood of successfully inducing confusion among consumers. Id.

In this case, the likelihood of confusion is established in Section A(1), previously. Plaintiff alleges in the Complaint that plaintiff has used "BIOGEN" more than twenty years as a name and a mark in connection with its business, and that it is inherently distinctive as used in connection with the business of plaintiff Biogen Idec. Exh. 1, paras. 25-26 and attachment A thereto. The 'BIOGEN' name is well and favorably known in the biotechnology and pharmaceutical industries and to the relevant public as a result of the efforts of Biogen Idec for more than twenty years. Exh. 1, para. 27.

The defendant's infringing use incorporates the whole of the "BIOGEN" mark, and only appends to it the descriptive suffix "TECH" or "TEC." This descriptive suffix is similar in sound to the terminal syllable in the Biogen Idec corporate name. Exh. 1, para. 28. The addition of the appended syllable accordingly does nothing to obviate the close similarity between the parties' marks and names. Id. Where, as here, the business, goods and services of the defendant is closely related to those of the plaintiff, most notably in connection with the development and commercialization of medical products, particularly in the field of immunomodulation, the similarity of the confusing infringing mark is likely to deceive purchasers and potential purchasers in the relevant trade and public as to the nature, characteristics, or qualities of the business, goods and services of Biogentech. Exh. 1, para. 31. The registration of the "BIOGEN" mark provides constructive notice of plaintiff's claim of ownership, and defendant cannot claim that it adopted the mark in good faith and without knowledge of the prior use. 15 U.S.C. § 1072. The acts and activities of Biogentech complained of constitute false and misleading designation of origin and false and misleading representations in violation of 15 U.S.C. § 1125(a).

Plaintiff therefore contends that the allegations of the complaint are sufficient to support the substantive causes of action in trademark infringement and unfair competition claimed pursuant to the Lanham Act.

**B.    Plaintiff Maintains That Significant Monetary Amounts Are At Stake, and the Possibility of Prejudice From the Defendant's Continued Use is Substantial**

As stated in late 2003 on its website, sections of which are attached to the Complaint, plaintiff was formed from the merger of two of the world's leading biotechnology companies. See attachment A to Exh. 1, para. 2. Biogen Idec expects to initially invest over $550 million dollars per year in research and development and has 1,000 Research and Development

employees, including approximately 400 in discovery research. Id. The company currently employs approximately 4000 people worldwide. Id.

Plaintiff maintains that the infringement of its registered trademark, and the false designation of origin occasioned by the marks improperly used by defendant, deprive Biogen Idec of control over its reputation and goodwill, which results in significant monetary risk and harm to its registered marks.

As Biogen continues in its research and development of new and evolving medical products, pharmaceutical preparations and related services and businesses, the possibility of prejudice from the defendant's continued use of a mark that was rejected by the U.S. Trademark office due to the likelihood of confusion as to the source or sponsorship of goods, services, and business, is substantial. The possible confusion as to the affiliation of goods, services, and business in the same or similar market of developing medical products, pharmaceutical preparations, and immunomodulation is likely to result in significant economic damage to the plaintiff, as well as damage to its reputation and goodwill.

C. **There is No Evidence of Excusable Neglect in the Basis for Default Judgment, Where Plaintiff Sought to Pursue a Ruling on the Merits, But No Defense to the Claims Has Been Made**

The final two factors in the analysis of the entry of default judgment is whether the default was the result of excusable neglect, and the strong policy of the federal rules that favors decisions on the merits. Pepsico, 189 F.R.D. at 432 (citing Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)). In this instance, plaintiff sought an adjudication on the merits of its claims by filing an appropriate and detailed Complaint, and effectuating service upon the defendant. No intention to defend the merits of this case have been in any way communicated. No claim of excusable neglect has been raised. There can be no contested claims, where the

defendant has not answered or otherwise appeared. Therefore, plaintiff maintains, the entry of default judgment is fully warranted in this case.

## III. PLAINTIFF IS ENTITLED TO RELIEF AND DAMAGES AS SET FORTH IN ITS COMPLAINT

Under the Lanham Act, a court has the power to grant injunctions, to make monetary awards, including an award of defendant's profits, and to order the destruction of infringing articles. 15 U.S.C. §§ 1116, 1117, 1118 (2003). Furthermore, plaintiff maintains that it is entitled to recover the costs of the action, including attorneys' fees. 15 U.S.C. § 1117 (2003).

### A.  Injunctive Relief is Warranted

Under Section 1116 of the Lanham Act, this Court has "power to grant injunctions ... to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a) ... of section 43 [15 USCS § 1125(a)]." 15 U.S.C.S. § 1116(a) (2003). Any such injunction "may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction ... a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction." 15 U.S.C.S. § 1116(a) (2003).

Plaintiff has no adequate remedy at law, as alleged in its Complaint. Exh. 1, para. 21. The acts and activities of defendant complained of deprive plaintiff Biogen Idec of control over its reputation and goodwill, which constitutes irreparable injury. Id. Injunctive relief may be entered by default judgment in a trademark action. See, e.g., G. & C. Merriam Co. v. Webster Dictionary Co., Inc. 639 F.2d 29, 34 (1980).

In this case, defendant was notified in writing on April 22, 2003 and September 9, 2003, that plaintiff Biogen Idec determined that defendant was violating its trademark rights. See Exh. 1, para. 22 and attachment G thereto. Plaintiff requested that defendant commence a phase-out and termination of the infringing marks; withdraw its trademark application; change its corporate name by a date certain; and advise plaintiff of its intention with respect to those demands by September 29, 2003. See attachment G to Exh. 1. No response to either letter was received by plaintiff or its agents or representative.

The continued conduct of defendant accordingly constitute willful acts of infringement in derogation of plaintiff Biogen Idec's rights in its federally registered trademark. Injunctive relief in the form demanded in plaintiff's complaint, that defendant be permanently enjoined from all use of the infringing marks or names; that defendant cancel all domain names, corporate names, and fictitious name registrations containing "BIOGEN" as an element; and the order for express abandonment of defendant's trademark application, are therefore warranted in this case.

### B.   Affirmative Relief in Recovering Infringing Material is Authorized

This Court has discretion in ordering the defendant to engage in affirmative relief in the form of returning and delivering infringing material for destruction: "In any action arising under [the Lanham Act], in which a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) [15 U.S.C.S. § 1125(a)] ..., shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark, or in the case of a violation of section 43(a) [15 U.S.C.S. § 1125(a)] ..., the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof,

and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed." 15 U.S.C.S. § 1118 (2003).

Plaintiff contends that its request that defendant be required to deliver to the Court for destruction all printed and all other promotional materials which refer to "BIOGENTECH" or "BIOGENTEC" as a name or mark, or a component of a name or mark, is therefore warranted.

### C. Plaintiff's Request for an Account is Permitted

Fed.R.Civ. P. 55(b)(2) expressly provides that, if "in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper ...." Plaintiff's request for defendant to account and pay over to plaintiff all profits derived by defendant under either infringing mark is therefore warranted.

### D. Attorneys' Fees are Justified Based on Defendant's Willful Infringement

An award of attorneys' fees is warranted where the case is "exceptional," i.e., where the infringement was "malicious, fraudulent, deliberate, *or* willful." Schroeder v. Lotito, 747 F.2d 801, 802 (1st Cir. 1984) (emphasis added). See also Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 31 (1st Cir. 2002); Polo Fashions, Inc. v. 1st American Sportswear, 1987 U.S. Dist. LEXIS 329 (D. Mass. 1987). A "finding of bad faith or fraud is not a necessary precondition [to an award of attorney's fees]. Willfulness short of bad faith or fraud will suffice when equitable considerations justify an award ...." Tamko, 282 F.3d at 32 (upholding award of attorney's fees where there was evidence of defendant's willful behavior, both in the infringing acts and in defendant's conduct after plaintiff brought the infringement to defendant's attention).

Plaintiff Biogen Idec therefore maintains that this Court may conclude that plaintiff's conduct was willful, and that equitable considerations justify an award of costs and fees, based upon the defendant's conduct in continuing to infringe on a registered mark; defendant's disregard of the rejection of its own application for a mark; defendant's failure to respond to two cease and desist letters; and defendant's failure to defend the merits of this lawsuit. The defendant's willful conduct, together with the equities, justify an award of costs and fees in this case.

Therefore, plaintiff prays that:

a. Defendant, its officers and agents, be permanently enjoined from all use of BIOGENTEC and/or BIOGENTECH and any other name or mark which contains or comprises "BIOGEN" as a mark or name or component of a mark or name on or in connection with any pharmaceutical business, preparation or service;

b. Defendant deliver up to the Court for destruction all print and all other promotional materials which refer to BIOGENTEC or BIOGENTECH as a name or mark or component of a name or mark;

c. Defendant be directed to cancel all domain names, corporate name and fictitious name registrations for any names which contain or comprise "BIOGEN" as an element, including BIOGENTEC and BIOGENTECH;

d. Defendant be directed to expressly abandon trademark application serial no. 78/200431;

e. Defendant be directed to account and pay over to plaintiff all profits derived by defendant under either or any of the BIOGENTEC or BIOGENTECH marks and names;

f.  Defendant be directed to pay to plaintiff the costs of this action and its reasonable attorneys fees, the amount of which shall be determined upon *in camera* submission; and

g.  that plaintiff be awarded such other and further relief as this Court may deem warranted.

A proposed form of order is attached as Exhibit 6 hereto.

## CONCLUSION

As default has been entered in this case, as defendant has failed to appear to defend itself, and as plaintiff has clearly established defendant's several willful violations of the Lanham Act, plaintiff requests that default judgment be entered in its favor in the form attached as Exhibit 6, and that plaintiff be awarded the relief sought in its Complaint.

WHEREFORE, plaintiff Biogen Idec MA Inc. requests that default judgment be entered against the defendant, Biogentech Corporation, and that this Court order that plaintiff recover relief and damages as sought in its Complaint.

Respectfully submitted,
Biogen Idec MA Inc.,
By its attorneys,

_____
Peter Durney BBO #139260
Patricia A. Hartnett, BBO #568206
Cornell & Gollub
75 Federal Street
Boston, MA 02110
Telephone:   (617) 482-8100
Facsimile:   (617) 482-3917

and

*Roberta Jacobs-Meadway /PAH*
Roberta Jacobs-Meadway, Esq.
(admitted pro hac vice)
Richard E. Peirce, Esq.
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8201
Facsimile: (215) 864-9950

Dated: March 9, 2004

## CERTIFICATE OF SERVICE

The undersigned counsel for plaintiff hereby certifies that the Memorandum in Support of Plaintiff Biogen Idec MA Inc.'s Motion for Entry of Default Judgment Pursuant to Fed. R. Civ. P. 55(b) was forwarded, via overnight courier, on this 9th day of March, 2004, to:

Biogentech Corp.
Suite 150
445 McCabe Way
Irvine, CA 92614

Patricia A. Hartnett